UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 3:01CV1073 (JCH) |
| | : | |
| FOUR PARCELS OF PROPERTY LOCATED AT 28-31 BOUTON STREET, NORWALK, CONNECTICUT, WITH ALL APPURTENANCES AND IMPROVEMENTS THEREON, AND | : | |
| | : | |
| Defendants. | : | |
| | : | |
| [CLAIMANT: ALQUEEN BURDEN] | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 3:01CV1086 (JCH) |
| | : | |
| ONE PARCEL OF PROPERTY LOCATED AT 27 LINCOLN AVENUE, NORWALK, CONNECTICUT, WITH ALL APPURTENANCES AND IMPROVEMENTS THEREON, | : | |
| | : | |
| Defendant. | : | October 24, 2003 |
| | : | |
| [CLAIMANT: ALQUEEN BURDEN] | : | |

UNITED STATES OF AMERICA'S OPPOSITION
TO CLAIMANT'S MOTIONS FOR PROTECTIVE ORDER

_____The United States of America (the "United States") hereby submits this Memorandum in Support of its Opposition to Claimant's Motion for Protective Order in each of the above-captioned cases ("Motions"). As grounds for this opposition, United States says the following:

Claimant requests that plaintiff, the United States, be barred from having agents of the Federal Bureau of Investigation ("FBI") conduct or attempt to conduct interviews of witnesses who are identified in claimant's discovery responses. Claimant requests that, before conducting any such interviews, the government be required to find and employ for that purpose individuals who lack the power to make arrests. As grounds for this request, claimant asserts that: interviews conducted by FBI agents are inherently coercive, and invoke "terror" in the mind of the witness, Motion at 3; the allegedly coercive nature of such interviews would routinely cause witnesses either to falsely change their recall of the facts into "a version of the events that squares with what the government . . . wishes to hear," or to "not testify at all," Motion at 3; and such an allegedly coercive influence upon claimant's witnesses' recollections constitutes an unfair advantage in civil litigation, which violates her rights to due process and equal protection of the laws, and also constitutes a civil rights violation under 42 U.S.C. § 1981.

## Summary of Argument

Claimant's motion has no merit in the case law nor as a matter of public policy. The only reported federal cases on point have entirely rejected the same requests made by parties to civil litigation against the United States. Claimant cites not a single court decision, and no statutory or Constitutional provision, in support of her proposition that FBI agents or any other federal agents having arrest powers should be barred from interviewing the witnesses of the party adverse to the federal government in a civil lawsuit. Claimant's argument overlooks the fact that a substantial share of the Department of Justice's investigation and prosecution of civil law violations - including, but not limited to, all varieties of financial fraud, health care fraud, and false claims - are investigated by FBI agents, who routinely interview defense witnesses in preparation for trial. Similarly, much of the rest of the Department of Justice's civil trial docket

depends upon the work of other federal investigating agents, including all variety of Inspector General agents and Internal Revenue agents, all of whom routinely interview witnesses who may testify for the opposing party. Surely the law does not contemplate barring all such agents from interviewing civil trial witnesses. Claimant's allegation of unfair advantage neglects the fact that, whereas all of the Department of Justice's investigating agents are subject to multiple layers of oversight and internal investigation, which are easily triggered by a single complaint, defense investigators operate relatively free from any such oversight and constraints. Finally, insofar as claimant relies on the facts of a prior case that involved allegations of improper contacts between local police and a criminal defense witness, that case is inapposite here, where the sole question is whether federal law bars federal agents from interviewing civil case witnesses using lawful and ethical interviewing methods.

## Argument

The pertinent case law unequivocally rejects claimant's argument. Undersigned government counsel has found only two published, federal cases that address the issue raised by claimant: Dyer v. Schechter, et al., 77 F.R.D. 696 (N.D. Ohio 1977), and United States v. International Business Machines Corp., 415 F. Supp. 668 (S.D. N.Y. 1976). These two cases - which also happen to involve FBI agents - could not be more clear in rejecting arguments identical to those raised here by claimant. In the latter case, which involved a civil antitrust prosecution, the defendant asserted, as does the claimant here, that: "(1) FBI interviews are inherently coercive and abusive; (2) . . . FBI interview reports are unfair . . . weapons in the hands of government counsel; [and] (3) use of the FBI fundamentally impairs IBM's ability to defend itself." United States v. International Business Machines Corp., 415 F. Supp. 668, 670 (S.D. N.Y. 1976). In rejecting these arguments, the court first reaffirmed "the 'time-honored and

decision honored' principle 'that counsel for all parties have a right to interview an adverse party's witnesses (the witness willing) in private, without the presence or consent of opposing counsel and without a transcript being made.'" Id. (quoting International Business Machines Corp. v Edelstein, 526 F.2d 37, 42 (2d Cir. 1975)).  The Court then addressed IBM's claims that "use of the FBI is inherently coercive," stating:

> . . . IBM's points in support of this argument are not persuasive.  The presence of FBI agents in an interview context has not been shown by IBM to be inherently coercive. . . [S]peculation about a witness' apprehensions is insufficient support for the claim that no true consent [to an interview] by the witness is obtainable. . .
>
> In sum, the court does not accept IBM's contention that interviews conducted by plaintiff's counsel through agents of the FBI are not in fact interviews and legitimate exercises of the right to interview an adverse party's witnesses.

United States v. International Business Machines Corp., supra, 415 F. Supp. at 671.  The court also rejected as immaterial defendant's argument that interviews conducted by "the FBI subjects [its] witnesses to the threat of perjury sanctions under section 1001 of Title 18," reasoning that "false statements made to other agents of the Department of Justice including [Department of Justice] attorneys may be subject to the same penalties . . . [and] it is clearly permissible for Department of Justice attorneys to interview defendant's witnesses . . . ."  United States v. International Business Machines Corp., 415 F. Supp. at 671-672.

The other reported case on point, Dyer v. Schechter, et al., 77 F.R.D. 696 (N.D. Ohio 1977), involved a civil rights lawsuit joined by the United States against various managers of residential rental properties.  The defendants sought a protective order to bar the use of FBI agents for interviewing tenants.  Citing United States v. International Business Machines Corp., supra, the court rejected the argument that such interviews are inherently coercive, noting the

lack of support for such an assertion. The court also acknowledged the far-reaching effects that would follow from granting the defendant's request:

> The argument that defendants are entitled to a protective order to preclude the Attorney General from employing FBI agents in interviews of the tenants is also without merit. Defendants have not asserted any basis for such a restriction except the argument that FBI conducted interviews are inherently coercive. The fact alone that FBI agents rather than other government agents are employed in interviewing potential witnesses and otherwise investigating claims in a civil action provides no basis for Court intervention in the discovery process. . . The Court could not hold otherwise without adopting a per se rule precluding use of FBI agents by government attorneys in investigating civil claims.

Dyer v. Schechter, et al., supra, 77 F.R.D. at 699 (citation omitted).

Claimant neither mentions nor addresses these directly applicable authorities in her Motions. Nor has claimant cited a single court decision holding - or even suggesting - that FBI agents or any other federal agents having arrest powers should be barred from interviewing the adverse party's witnesses in civil litigation. Claimant similarly fails to cite any statutory or Constitutional provision that speaks to this particular issue. Instead, claimant makes no more than bald assertions that the alleged disadvantage of which she complains must violate some notion of due process or equal protection, or must be deemed actionable under the civil rights statute, 42 U.S.C. § 1981, while failing to cite any authority for these assertions. Cf. Manchester v. Rzewnicki, 777 F. Supp. 319, 329 (D. Del. 1991), aff'd, 958 F.2d 364 (3d Cir. 1992) (rejecting plaintiff prisoner's claim that defendant state officials had "unfair advantage" because they had counsel appointed to represent them, noting that plaintiff "cites no cases to support the theory that lawful representation which creates an 'unfair advantage' constitutes a Constitutional deprivation," and that plaintiff "does not allege any facts that 'shock the conscience' of this Court, involving either a high degree of harm or culpability, or deprivation of a well-defined

right to property or liberty," nor any other facts that would "state a Constitutional deprivation for which the plaintiff is entitled to relief under § 1983".).[1]

A precedent that barred FBI agents from interviewing adverse parties' witnesses in civil litigation - if followed by other courts - would have enormous, adverse consequences for a substantial portion of the Department of Justice's civil litigation nationwide. Such a precedent would bar the FBI from a significant and, in practice, irreplaceable role of assisting Department of Justice attorneys in preparing for trial in many of the Department's most difficult and important civil cases. Cf. Dyer v. Schechter, et al., supra. Moreover, such a precedent would almost certainly have the same adverse impact upon the great many civil cases that are investigated by federal agents from institutions other than the FBI. Armed with such a precedent, attorneys for private parties would argue - with likely success - that to the lay witness not

---

[1] If equal protection analysis were applicable, the government submits that the standard of review would be the "rational basis" test, and that the government's need for experienced agents familiar with the facts and history of the investigation clearly bears a rational relation to a legitimate governmental interest. See Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 312 (1976) ("equal protection analysis requires strict scrutiny of a legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class"); Morrison v. Davis, 88 F. Supp.2d 799, 804-805 805 (S.D. Ohio 2000), amended in part on other grounds, 195 F. Supp.2d 1019 (S.D. Ohio 2001) (in prisoner litigation cases challenging alleged unfairness of Prisoners Litigation Reform Act, standard of review for equal protection analysis is the rational relation test, because prisoner-litigants are not a suspect classification, and no fundamental right is deemed subject to interference so long as the "[p]risoners still possess what the Supreme Court has said the Constitution requires: 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts'" (quoting Zehner v. Trigg, 133 F.3d 459, 463 (7th Cir.1997), aff'd,133 F.3d 459 (7th Cir. 1997) (quoting Lewis v. Casey, 518 U.S. 343, 345 (1996))). Simply stated, not all inequities that arise either in the course of litigation or in the outcome of litigation, whether civil or criminal, amount to constitutional violations. Cf. Tulali v. United States, 29 F. Supp.2d 1177, 1182 (D. Hawaii 1998) (rejecting due process and equal protection claims based on sentencing differentials between crack cocaine and powder cocaine, noting that "'inequities inherent in the [sentencing] guidelines do not constitute a constitutional violation").

familiar with the alphabet soup of federal agencies relied on by the Department of Justice, there is little difference between being approached for an interview by an FBI agent displaying a badge, and being approached by an Internal Revenue Service ("IRS") Agent with a badge, or by one of the plethora of Office of Inspector General ("OIG") Agents displaying a badge.  Like FBI agents, such agents routinely investigate allegations of fraud and false claims for different branches of the federal government; they are thoroughly trained in interviewing techniques; they often have the capacity to refer matters for criminal as well as civil prosecution; and a material, false statement made to any one of such agents can be grounds for criminal prosecution under 18 U.S.C. § 1001.  Surely the law does not contemplate barring all such agents from conducting interviews of an adverse party's witnesses on behalf of the Department of Justice.[2]

Claimant's argument not only lacks legal authority, but also manifests a level of hyperbole[3] that poorly reflects the pertinent context and constraints within which federal agents

---

[2] Attempting to carry out such a mandate would be prohibitively difficult for at least two reasons.  First, the Department of Justice would have to hire and train an entire new corps of in-house investigators, at a cost for which there is no realistic place in the current federal budget.  Second, even if such investigators could be hired, most would presumably be entering the cases only after criminal prosecution had been declined or completed, and the FBI or some other criminal investigator had completed an investigation.  At that juncture, barring the federal agents from conducting pre-trial interviews in the civil case would deprive the government of the one or two agents who alone would have the capacity effectively to undertake such interviews.  Their proficiency at such tasks would derive precisely from their prior involvement in the investigation.  Agents who lacked such factual knowledge would be unfairly handicapped in their ability to assist in trial preparation.

[3] Asserting that civilian witnesses experience "terror" when an FBI agent seeks to conduct a consensual interview is an especially poor choice of terms in these times.  Witnesses

conduct their investigative work.  FBI agents, like other federal agents, are subject to a number of career-threatening levels of review and sanction, all of which can be triggered simply by a civilian's or attorney's allegation.  The FBI has its own internal Inspector General, and the Department of Justice has a separate Inspector General that can and does investigate the conduct of the FBI and its agents.  The Department of Justice has an Office of Professional Responsibility that investigates federal agents and Department attorneys for allegations of unethical or unprofessional conduct.  The Department of Justice also has a Public Integrity section and a Civil Rights Criminal division, each of which can and does investigate and indict federal agents for conduct in the course of their employment that violates federal criminal laws.  None of these entities are paper tigers - they can and do take aggressive action where the facts warrant it.  All this stands in stark contrast to the work that private investigators do for non-governmental litigants, which occurs in the absence of all these layers of review and oversight.  This contrast - thoroughly ignored by claimant's Motions - is significant in making a fair assessment of claimant's plea of disadvantage with respect to the persons and resources available to conduct witness interviews.

Finally, claimant writes at length about a single criminal case that was initiated and eventually dismissed by the U.S. Attorney's office, <u>United States v. Wayne Myers</u>, No. 3:02CR-

---

experience anxiety and stress - some more than others - and the government recognizes that some agents, like some members of all professions, occasionally overstep the boundaries of professional conduct.  But to equate the typical FBI-citizen encounter with "terror" is a gross and demeaning mischaracterization of how FBI agents do their investigative work.

174(SRU), arguing that the history of that one case illustrates the unfair advantages of having FBI agents conduct witness interviews in civil cases. Yet the <u>Myers</u> history is not pertinent to the issue raised by claimant's motion. At the core of claimant's motion is the necessary assertion that, where federal agents do their jobs ethically and professionally, they will still routinely have the effect of unfairly coercing and intimidating witnesses in civil litigation, to such an extent that the witnesses will either conjure up false stories that hurt the adverse party's case, or will conjure up excuses and circumstances rendering themselves unavailable to testify for the adverse party. Apart from the government's wholesale rejection of that assertion, we note that this was not the issue presented by the <u>Myers</u> case. <u>Myers</u>, by contrast, raised case-specific allegations focused on the conduct of local, city police officers in certain contacts with a potential defense witness in a criminal case. <u>Myers</u> was not a civil case, and as noted, it focused mostly on witness contacts made by the local police. Without conceding that there was misconduct in the <u>Myers</u> case, we note that the remedy for any such case-specific allegations consists of case-specific inquiries and assessments. Sometimes, as happened in the <u>Myers</u> case, the government makes the determination that it is best not to proceed with the case. Sometimes, as noted above, the officers' or agents' conduct will come under further, extensive scrutiny, where sanctions or criminal prosecution are among the possible outcomes. And in some cases, the allegations are determined to be without a factual basis. In all cases, however, there are case-specific remedies and procedures available to address allegations that officers or agents failed to act in an ethical or professional manner in dealing with a witness. These are the appropriate avenues of redress for the concerns hypothetically asserted by claimant - not a blanket

prohibition on witness interviews, that unjustifiably presumes <u>per</u> <u>se</u> coercion and intimidation.

WHEREFORE, the United States respectfully requests that defendant's Motion for Protective Order should be DENIED.

Respectfully submitted

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY

By: _____
DAVID J. SHELDON
ASSISTANT UNITED STATES ATTORNEY

For: _____
HENRY K. KOPEL
ASSISTANT UNITED STATES ATTORNEY
Fed. Bar No. ct24829
157 Church Street, 23d Floor
New Haven, CT 06510
(203) 821-3769

CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing Opposition has been sent by first class mail, postage prepaid, on this 24th day of October, 2003, to:

      Robert Sullivan, Esq.
      190 Main Street
      Westport, CT 06880

      _____
      DAVID J. SHELDON
      ASSISTANT U.S. ATTORNEY
      157 CHURCH STREET, 23d FLOOR
      NEW HAVEN, CT 06510
      (203) 821-3769
      FEDERAL BAR # ct24829